IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Jill L. Ring, Derek T. Thompson,<br>and Charles L. Gibson,<br><br>Plaintiffs,<br><br>vs.<br><br>The Sports Authority, Inc.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 6:04-21848-HFF-WMC

**REPORT OF MAGISTRATE JUDGE**

This matter is before the court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. In their complaint, the plaintiffs allege causes of action for breach of contract, breach of contract accompanied by a fraudulent act, and fraud related to their employment with the defendant.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

Plaintiff Jill Ring was employed as the manager of the defendant's store in Greenville, South Carolina (compl.¶ 3; Bechtel aff. ¶ 3). Plaintiffs Derek Johnson and Charles Gibson were assistant managers at the same facility (compl.¶¶ 4-5; Bechtel aff. ¶ 3).

In early 2003, Lance Ford, a loss prevention manager for the defendant, and Joe Bechtel, district manager for the defendant, became aware of suspected misuse or abuse of store coupons or discounts in the Greenville location (Ford aff. ¶ 3; Bechtel aff.

¶ 6).  Discount coupons issued by the defendant contained language that they were not valid with employee discounts (Bechtel aff. ¶ 22; Ford aff. ¶ 12-13).

Ford conducted an investigation and interviewed each of the plaintiffs separately with the assistance of Bechtel; each admitted to using the discount coupons at issue (Ford aff. ¶ 6; Bechtel aff. ¶ 9).  Plaintiffs Gibson and Johnson admitted allowing non-family members to use their employee discounts (Ford aff. ¶¶ 7-8; Bechtel aff. ¶¶ 10-11, 20-21).  Plaintiff Ring admitted that she had used and authorized employees to use discount coupons in conjunction with their employee discounts and that she had authorized markdowns on merchandise (Ford aff. ¶ 9; Bechtel aff. ¶¶ 12, 19).  Accordingly, Ford and Bechtel determined that the plaintiffs had violated company policy, and the defendant decided that the plaintiffs should be terminated in light of the rampant nature of the discount problem and the higher degree of responsibility of the plaintiffs as managers of the Greenville location (Ford aff. ¶ 11; Bechtel aff. ¶¶ 15, 17-18).  The defendant discharged the plaintiffs from employment on February 6, 2003 (compl.¶ 10).

## PROCEDURAL BACKGROUND

The plaintiffs filed this action in state court on July 2, 2004, alleging claims for breach of contract, breach of contract accompanied by a fraudulent act, and fraud.  The defendant was served on July 15, 2004, and removed the case to this court on August 11, 2004, pursuant to 28 U.S.C. §1332.  A scheduling order was issued on August 25, 2004, setting a discovery deadline of February 16, 2005, and a dispositive motion deadline of March 3, 2005.

On March 3, 2005, the defendant filed a motion for summary judgment.  That same day, the plaintiff filed a motion for extension of time to complete discovery, a motion for leave to file an amended complaint, and a motion for partial remand.  At a hearing on March 31, 2005, this court granted the plaintiff's motion for an extension of time to complete

2

discovery and ordered discovery to be complete in 30 days. All other motions filed by the plaintiff were withdrawn.

The defendant re-filed its motion for summary judgment on June 23, 2005. The plaintiff re-filed its memorandum in opposition to the defendant's motion on July 22, 2005. The defendant filed a reply to the plaintiff's opposition on August 1, 2005.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not

3

rest on the allegations averred in his pleadings. Rather the non-moving party must demonstrate that specific material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### Breach of Contract

The plaintiffs allege that the defendant altered their employment status as at-will employees by issuing an employee handbook that included policies and procedures that they relied upon in accepting and continuing their employment with the defendant (compl. ¶ 28). Arguing that the employee handbook constituted a contract with the plaintiffs, they argue that the defendant breached this contract:

4

(a) by terminating Plaintiffs employment when there was no violation of prohibited or unauthorized conduct as defined by the Handbook.

(b) by terminating Plaintiffs employment without following its own policies and procedures regarding equal treatment of all employees as outlined in the Handbook.

(c) by terminating Plaintiffs employment without following its own policies and procedures regarding corrective action.

(d) by terminating Plaintiffs employment without allowing Plaintiffs the opportunity to avail themselves of the problem solving process described in the Handbook.

(e) by not treating Plaintiffs in an equal manner relative to other employees that committed the same or similar offense.

(f) by breaching the implied covenant of good faith and fair dealing implied in every contract.

(Compl. ¶ 29).

Under South Carolina law, "[g]enerally, an employer may terminate an at-will employee for any reason or no reason and will not be subjected to a breach of employment contract claim." *Horton v. Darby Elec. Co.*, 599 S.E.2d 456, 460 (S.C. 2004) (citing *Conner v. City of Forest Acres*, 560 S.E.2d 606 (S.C. 2002)). In order to successfully assert a claim for breach of contract, a plaintiff must demonstrate that some action by her employer altered her status as an at-will employee. *Conner,* 560 S.E.2d at 610 (citing *Small v. Springs Indus., Inc.*, 388 S.E.2d 808 (S.C. 1990)). To do so, the plaintiff has the burden of proving: (1) a specific offer, (2) communication of the offer to the employee, and (3) performance of job duties in reliance on the offer. *Prescott v. Farmers Telephone Coop., Inc.*, 516 S.E.2d 923, 925 (S.C. 1999). Summary judgment is appropriate on the existence of a contract unless (1) its existence is questioned and (2) the evidence is either conflicting or admits of more than one inference. *Conner*, 560 S.E.2d at 610.

In *Horton v. Darby Elec. Co.*, the South Carolina Supreme Court reviewed whether the employee handbook issued by the defendant employer altered the at-will status

5

of the plaintiff employee. The manual at issue in *Horton* contained disclaimer language in two sections of the book, "Purpose" and "Statement on Policies" – "We emphasize . . . that YOUR EMPLOYMENT IS AT THE WILL OF YOU AND THE COMPANY. EITHER MAY TERMINATE THE EMPLOYMENT AT ANY TIME, FOR ANY REASON. NOTHING HEREIN IS INTENDED TO BE CONSTRUED AS A CONTRACT OF EMPLOYMENT." 599 S.E.2d at 460. The handbook at issue in the present case contains similar disclaimer language in at least two sections, "Information in this Handbook" and "Corrective Action":

> While we hope our relationship will be mutually beneficial, it is understood that this handbook does not guarantee employment for any specific duration. It is understood that neither you as an employee nor [the defendant], has entered into any employment contract. The sole employment relationship is and shall continue to be, one of voluntary employment-at-will. You may terminate it at any time for any reason, with or without notice, and [the defendant] may do the same.

(Def. msj ex. D at 5; *see also* def. msj ex. D at 14).

In addition to disclaimers, the *Horton* manual contained a disciplinary procedure that used permissive language rather than providing for mandatory progressive discipline. 599 S.E.2d at 461. Specifically, the disciplinary procedure provided, *inter alia*, that

> (1) the disciplinary procedure "is to be viewed as the *guiding policy* insofar as taking disciplinary action . . .;" (2) "supervisors are *not required* to go through the entire three steps involved in the disciplinary procedure;" (3) "[d]iscipline *may* begin at any step in the procedure depending on the seriousness of the offense committed;" and (4) "supervisor *may* repeat any of the first two steps of this procedure when he feels necessary, so long as the discipline is commensurate with the offense committed."

*Id*. at fn.7 (emphasis in original). In the present case, the disciplinary procedure uses similarly permissive language:

> • [The defendant] *does not adhere to a policy and practice of progressive corrective action or discipline because*

*circumstances differ considerably from one situation to another*. Each situation is assessed on its own merit and Managers have *discretion* in deciding on the type of corrective action, including termination of employment, applicable and appropriate under each circumstance.

• The Manager *may* give a Helpful Advisory Talk and place it in the employee's file.

• If a Helpful Advisory Talk is not appropriate under the circumstances, your Manager *may* proceed directly to a written Warning which will be placed in the employee's file.

• If a Warning and/or Helpful Advisory Talk are inappropriate, your Manager *may* proceed directly to a Notice of Probation which will be placed in the employee's file.

• If a Warning and/or Helpful Advisory Talk and/or a Notice of Probation are inappropriate, the Manager *may* terminate the employee's employment.

(Def. msj ex. D at 14) (emphasis added).  Indeed, the plaintiffs each testified that they understood that the corrective action procedure was not mandatory (Ring dep. at 35, 53; Johnson dep. at 33, 35; Gibson dep. at 21).  The plaintiffs point to no other promissory language in the handbook that they contend altered their employment status.[1]  In light of the inclusion of disclaimers and, more  importantly, the *absence* of promissory language, the employee handbook issued to the plaintiffs did not alter their status as at-will employees.

Even if the plaintiffs could show that the handbook could be interpreted to create a contract, the plaintiffs have not established that the defendant breached any provision of the handbook.  As highlighted above, the defendant's corrective action policy allowed for a manager to terminate an employee without a warning, helpful advisory talk or

---

[1] As noted above, to survive a motion for summary judgment, the non-moving party must demonstrate that specific material facts exist which give rise to a genuine issue.  *Celotex Corp.,* 477 U.S. at 324.  Indeed, Local Civil Rule 7.05(A)(5) instructs: "When a memorandum opposes a motion for summary judgment, a concise statement of the material facts in dispute shall be set forth with reference to the location in the record."  The plaintiff's memorandum in opposition, however, contains almost no reference to the record to establish evidentiary support for his various allegations.

7

notice of probation if such steps were deemed inappropriate for the circumstance.  As noted above, the plaintiff each testified that managers had this discretion (Ring dep. at 35, 53; Johnson dep. at 33, 35; Gibson dep. at 21).  Here, when Ford and Bechtel determined that the plaintiffs had violated company policy, the defendant decided that the plaintiffs should be terminated in light of the rampant nature of the discount problem and the higher degree of responsibility of the plaintiffs as managers of the Greenville location (Ford aff. ¶ 11; Bechtel aff. ¶¶ 15, 17-18).  Because no other step of corrective action was considered appropriate under the circumstances, the plaintiffs were terminated in accordance with the defendant's corrective action policy as contained in the handbook.  The plaintiffs have presented no evidence to establish that any portion of the policy was violated with respect to their terminations.  Thus, the plaintiffs' allegation that the defendant breached the handbook "by terminating [their] employment without following its own policies and procedures regarding corrective action" is without merit.

The plaintiffs also allege that the defendant breached its handbook "by terminating [them] when there was no violation of prohibited or unauthorized conduct as defined by the Handbook" (compl. ¶ 29(a)).  In the "Honesty and Integrity" section of the handbook, the defendant enumerated certain actions "considered inappropriate and unacceptable"; although the list was not intended to be all-inclusive, it did include "misuse of the employee discount benefit" (def. msj ex. D at 17).  The coupons at issue included language that they were "not valid with the . . . employee discount" (def. msj ex. P).  Plaintiff Ring admitted using the coupons and allowing other employees to use their coupons with the employee discount (def. msj ex. S).  Plaintiff Johnson also admitted using the coupons as well as allowing customers to use his employee discount (def. msj ex. R).  Similarly, plaintiff Gibson admitted using the coupons as well as allowing customers to use his employee discount (def. msj ex. Q).  The plaintiffs were terminated for misusing the employee discount benefit, an action clearly defined as "inappropriate and unacceptable"

8

by the handbook. Accordingly, the plaintiffs cannot establish that they were terminated when there was no violation of prohibited or unauthorized conduct as defined by the handbook.

Although the plaintiffs further allege in their complaint that the defendant breached the employee handbook "by terminating [their] employment without following its own policies and procedures regarding equal treatment of all employees as outlined in the Handbook" (compl. ¶ 29(b)), "by terminating [their] employment without allowing Plaintiffs the opportunity to avail themselves of the problem solving process described in the Handbook" (compl. ¶ 29(d)), and "by not treating [them] in an equal manner relative to other employees that committed the same or similar offense" (compl. ¶ 29(e)), they appear to have abandoned these allegations since they have presented no evidence to support even one of these assertions. Accordingly, these allegations are insufficient to establish their breach of contract claim.

Finally, the plaintiffs allege that the defendant breached the implied covenant of good faith and fair dealing implied in the alleged employment contract (compl. ¶ 29(f)). Since the plaintiffs have not established an underlying employment contract that altered their at-will status, this claim also fails. *See Dodgens v. Kent Mfg. Co.*, 955 F.Supp. 560, 567 (D.S.C. 1997); *Shelton v. Oscar Mayer Foods Corp.*, 459 S.E.2d 851, 857 (S.C. App. 1995), *affirmed* 481 S.E.2d 706 (S.C. 1997). Moreover, even if there did exist an underlying contract, the evidence is uncontradicted that the defendant had a reasonable good faith belief that sufficient cause existed for the plaintiffs' terminations. *Horton*, 599 S.E.2d at 461 (citing *Conner v. City of Forest Acres*, 560 S.E.2d 606 (S.C. 2002)). The plaintiffs have presented no evidence to the contrary. Thus, their claim for breach of contract should be dismissed as a matter of law.

***Breach of Contract Accompanied by a Fraudulent Act***

Because the plaintiffs can establish neither that their status as at-will employees was altered by an employment contract nor the breach of that contract, their claim for breach of contract accompanied by a fraudulent act also fails. *Dodgens v. Kent Mfg. Co.*, 955 F.Supp. 560, 567 (D.S.C. 1997).

Even if the plaintiffs were able to establish an underlying contract and the breach thereof, this claim still must fail because the plaintiffs cannot establish fraudulent acts independent from the alleged breach. Under South Carolina law,

> [i]n order to state a claim for breach of contract accompanied by a fraudulent act, a plaintiff must plead facts establishing three elements: (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach.

*Conner v. City of Forest Acres*, 560 S.E.2d 606, 612 (S.C. 2002) (citing *Harper v. Etheridge*, 348 S.E.2d 374 (S.C. Ct. App. 1986)). It is well-established that the fraudulent act must be separate and apart from the breach. *Harper*, 348 S.E.2d at 378. The plaintiffs, however, provide no evidence of a separate fraudulent act. Rather, their complaint alleges that the defendant made fraudulent misrepresentations "[i]n breaching the contracts" (compl. ¶ 32). They argue: "By promising to follow a disciplinary policy and requiring Plaintiffs to adhere to that policy, and then acting with at least reckless disregard of its promise (if not actual intent), Defendant has defrauded Plaintiffs" (pl. opp. at 9). Not only do the plaintiffs fail to provide evidence of a fraudulent act separate and apart from the breach, they implicitly concede a lack of fraudulent intent regarding the breach. Thus, even if the plaintiffs could establish an underlying contract and breach, their claim for breach of contract accompanied by a fraudulent act cannot survive summary judgment.

10

***Fraud***

The plaintiffs also assert a cause of action for fraudulent misrepresentation based on the following:

Prior to the execution of the contract described herein, Defendant made one or more representations to Plaintiff, including, but not limited to, the following:

(a) That Plaintiffs would only be terminated from their employment when there was a violation of prohibited or unauthorized conduct as defined by the Handbook.

(b) That Defendant would follow its own policies and procedures regarding equal treatment of all employees as outlined in the Handbook.

(c) That Defendant would follow the policy of corrective action outlined in the Handbook prior to termination of Plaintiff's employment.

(d) That Plaintiffs would be given the opportunity to avail themselves of the problem solving process described in the Handbook regarding any measure of corrective action taken against them.

(e) That all employees, including Plaintiffs, would be treated equally and fairly.

(Compl. ¶ 43). The plaintiffs further allege that these representations were "false," "material," and relied upon by the plaintiffs (compl. ¶¶ 44, 45, 48).

It is well-established under South Carolina law that

[i]n order to recover in an action for fraud and deceit, based upon misrepresentation, the following elements must be shown by clear, cogent and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; (9) the hearer's consequent and proximate injury. Failure to prove any one of the foregoing elements is fatal to recovery.

11

*Kahn Construction Co. v. South Carolina National Bank of Charleston*, 271 S.E.2d 414 (S.C. 1980).  Moreover, "the general rule is that fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events."  *Woodward*, 240 S.E.2d at 643 (quoting Davis v. Upton, 157 S.E.2d 567, 568 (S.C. 1967)).  As the Fourth Circuit has recognized, "a mere showing that a party has failed to keep his promises 'is not sufficient to demonstrate actionable fraud.'" *Tom Hughes Marine, Inc. v. American Honda Motor Co.*, 219 F.3d 321, 324 (4th Cir. 2000) (quoting *Woodward v. Todd*, 240 S.E.2dd 641, 643 (S.C. 1978)).

Here, the defendant's alleged statements did not relate to a present or pre-existing fact; rather, they were representations regarding future events.  Such allegations are not sufficient to support a fraud claim; thus, the plaintiffs' claim should be dismissed.

## <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, based upon the foregoing, it is recommended that the defendant's motion for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

October 6, 2005

Greenville, South Carolina

12